James M. Piotrowski, ISB # 5911
Marty Durand, ISB #5811
PIOTROWSKI DURAND, PLLC
P.O. Box 2864
Boise, ID 83702
(208) 331-9200 Telephone
(208) 331-9201 Facsimile
James@idunionlaw.com
Marty@idunionlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DAVID STRATTON, JAMES BEUTLER, MATEO GRIMALDO, ERIK GARCIA, ADRIAN ADAME, KEAGAN BARNES, TREVOR BENNETT, JOSH BOYCE, CHARLES CARVER, BRIAN CROSBY, ARON CHAMBERS, EDUARDO DIAZ, DANIEL GALLEGOS, SANTOS GODOY, WILFREDO GUZMAN, MICHAEL KERSHNER, THOMAS LUMBRERAS, OSCAR MARTINEZ, AMAIRAMI MEJIA-JIMENEZ, RICK MILLARD, NUVIA MORALES, MARTHA RIVERA, GREGORY SENKBEIL, PATRICK SNYDER, DAVID TAUFI, JESSE TORRES, SAMUEL TUITASI, STEVEN WADE, GARY WERNER, and ANDREW ZAGARIS, on behalf of themselves and all others similarly situated, <br><br>Plaintiffs,<br><br>v.<br><br>PACKAGING CORPORATION OF AMERICA,<br><br>Defendant. | CASE NO.<br><br><br><br><br><br><br><br><br><br>COMPLAINT FOR WAGE THEFT |

COME NOW the Plaintiffs, on behalf of themselves and all others similarly situated, and

for their Complaint will show as follows:

COMPLAINT – Page 1

## I.   INTRODUCTION

1. Plaintiffs each work for Defendant Packaging Corporation of America ("PCA") producing products for some of America's most successful corporations at a container making facility in Nampa, Idaho. While PCA boasts a market capitalization of approximately $18 billion, it is stealing wages earned by its factory workers in the Treasure Valley. Although PCA exercises total control over the workdays of its employees, including the Plaintiffs, it fails to pay them for all of the time that they work each day. PCA requires its employees to record the start and end times of their work shifts, on pain of discipline up to and including termination. Yet, PCA chooses to delete some of that time, using a time rounding system that only ever works in favor of PCA. This suit seeks compensation for these unpaid wages under both Federal and State law including all appropriate damages, penalties, liquidated damages, and compensation for underpaid benefits owed to Plaintiffs and all other similarly situated workers in PCA's Nampa, Idaho packaging plant.

## II.   PARTIES, JURISDICTION AND VENUE

1. Plaintiffs David Stratton, James Beutler, Mateo Grimaldo, Erik Garcia, Adrian Adame, Keagan Barnes, Trevor Bennett, Josh Boyce, Charles Carver, Aron Chambers, Brian Crosby, Eduardo Diaz, Daniel Gallegos, Analiyah Garcia, Santos Godoy, Wilfredo Guzman, Michael Kershner, Thomas Lumbreras, Oscar Martinez, Amairami Mejia-Jimenez, Rick Millard, Nuvia Morales, Martha Rivera, Gregory Senkbeil, Patrick Snyder, Jesse Torres, David Taufi, Samuel Tuitasi, Steven Wade, Gary Werner, and Andrew Zagaris are individuals who work or worked at PCA's Nampa packaging plant within the three years prior to this filing. Each of the Plaintiffs has executed a "Consent to Sue" by which they each individually affirmatively opted to join this lawsuit, and to bring these claims on behalf of themselves and all others similarly situated. Copies of their consents to sue are attached hereto as Exhibit A.

2. Defendant Packaging Corporation of America (PCA) is a foreign corporation registered to do and doing business in the State of Idaho. PCA is the successor (purchaser) of the

pulp and paper operations of Boise Cascade, L.L.C., which in turn was a successor to the Boise Cascade Corporation. PCA owns, operates and profits from the paper packaging plant in Nampa, Idaho at which the Plaintiffs work or worked.

3. This action arises under the laws of the United States. This Court has jurisdiction pursuant to 29 U.S.C. §216, 29 U.S.C. 1132, and 28 U.S.C. §1331. The Court has jurisdiction over any related state law claims pursuant to the 28 U.S.C. §1367. Because the defendants reside within the State of Idaho, and the acts or omissions giving rise to the claims stated herein occurred in the State of Idaho venue is appropriate in this District pursuant to 28 U.S.C. §139l(b).

### III.    FACTS GIVING RISE TO THE COMPLAINT

4. According to its statements to investors and the public, PCA is the "third largest producer of containerboard and corrugated packaging in North America." It employs nearly 15,000 people, at over 120 facilities primarily in the U.S.

5. PCA took over the Boise Cascade name and its pulp and paper operations in approximately 2013. This included the Nampa facility where, typically, over 100 employees are involved in the production of corrugated and containerboard products.

6. Since its purchase of Boise Cascade, PCA has been financially successful. Over the past few years, common stock shares in PCA have nearly doubled in value. PCA has issued quarterly dividends to its shareholders in each of the last five years. In a July, 2024 earnings report conference call, PCA reported that it had exceeded its projected revenues and earnings, having received over $2 billion in revenues, driving its market capitalization to exceed $18 billion.

7. In that same earnings report conference call, PCA pointed out the successes and productivity of its "converting"[1] facilities, including the Nampa plant.

---

[1] "Converting" is the term used in the paper industry for turning paper into corrugated cardboard and other types of packaging materials.

8. PCA exercises complete control over the daily operations in its Nampa facility. Production, maintenance and shipping workers in the plant are covered by a detailed collective bargaining agreement which specifies when the workers are to clock in and out for their shifts. The collective bargaining agreement is supplemented by PCA-imposed policies and work rules which also detail when employees shall clock in and clock out of work.

9. Most PCA employees in Nampa are expressly required to be at their workstation and ready to work when they clock in. Most PCA employees clock in via a computer terminal at their assigned workstation. Likewise, employees are required to clock out at the end of their shift, but are prohibited from clocking out unless and until they have been relieved by the next shift.

10. Per PCA rules, clocking in late (after the shift starting time) will usually result in a "point" in PCA's arbitrary and mandatory attendance policy. Clocking out early (before the shift ending time) will usually result in a "point" in that same policy. Calling in sick results in a "point," failing to follow the detailed provisions for calling in sick results in a second "point." Per the policy, the accumulation of five (5) "points" will result in disciplinary warnings, and accumulation of eight (8) "points" will result in termination of employment.

11. The attendance policy creating and driving this "point" system specifies that "Employees must be at their workstations at their scheduled work time and remain at their workstation until they are properly relieved."

12. The attendance policy, combined with other PCA policies, forces employees to arrive at their workstations before their shift starting time in order to avoid clocking in late and accruing a point. The policy likewise forces employees to remain at their workstation until they have been "properly relieved." The result of these policies is that employees at the Nampa facility almost always clock in before their shift starts. Because they are required to clock in fully prepared to work, and at their workstation, Plaintiffs and other workers almost always begin working at the time they clock in. Similarly, Plaintiffs and other workers almost always continue

working beyond the end of their scheduled shift, and only stop working when they clock out.

13. The work performed by Plaintiffs and similarly situated workers at the Nampa plant is at times difficult, manual, grueling and performed in difficult conditions. The Nampa facility is not air conditioned, meaning that working conditions become extremely hot in warmer months (exceeding the Treasure Valley's already high temperatures) and cold during colder months. Plaintiffs and other employees at the Nampa facility are routinely required to work overtime including working extended shifts sometimes in excess of 12 hours per day and working additional shifts on weekends. Such overtime work is mandatory, and refusal to do such work can result in additional "points" in the attendance system. On average, Plaintiffs and similarly situated employees work more than 125% of full-time hours.

14. The work performed by Plaintiffs and similarly situated workers at the Nampa plant is also dangerous. Since PCA took over the Nampa facility, reportable workplace injuries (injuries resulting in time lost from work) among PCA's hourly production employees have typically ranged from six (6) to ten (10) per year. With less than 100 such employees currently on the payroll, this means that between six (6) and eleven (11) percent of employees are likely to suffer an injury each and every year, further meaning that each worker faces up to a 1 in 9 chance of a significant injury each year. These harsh conditions and harsh employment policies have likewise resulted in an annual turnover rate for employees at PCA's Nampa facility of over 30%.

15. PCA controls the working conditions, determining which machines will be used in the plant, how they will be staffed, what work will be done, what materials will be used, what shifts are worked, and how many employees will perform the work, as well as how employee work time is recorded and paid for. PCA cannot help but be aware that its hourly employees at the Nampa facility are subject to the Fair Labor Standards Act and its requirements to pay for all time worked.

16. In 2005, employees in this same facility (owned at that time by Boise Cascade

which had changed its name to OfficeMax) brought suit for violations of wage and hour laws. That suit was resolved via a consent judgment and an award of fees in favor of plaintiffs. The violations alleged in that case were nearly identical to the violations alleged herein.

17. PCA uses a timekeeping system for its Nampa employees that records the exact time of each punch, and reports those punches to the nearest minute. On information and belief the system is capable of recording punch times to the second.

18. Despite controlling the work, knowing the work was being done, benefitting from the work, and ensuring it could accurately track the amount of work time, PCA does not pay its Nampa production employees for all of the time that they actually work. Instead, when an employee clocks in up to seven (7) minutes before their shift starts, PCA reduces the time paid by altering the punch time to the shift start time. Thus, employees lose up to seven (7) minutes of pay per day because of PCA's decision to cut their time worked at shift start.

19. At the end of shift, when an employee clocks out up to seven (7) minutes after their scheduled shift end, PCA reduces the time paid by altering the punch time to the scheduled shift end time. Thus, employes lose up to seven (7) minutes of pay per day because of PCA's decision to cut their time worked at shift end.

20. If an employee clocks in more than seven (7) minutes before the start of their scheduled shift, PCA does not round their punch at all. Likewise, if an employee clocks in more than seven (7) minutes after the end of their scheduled shift, PCA does not round their punch at all. PCA thus removes time from employees' actual time worked, but never adds time to the amount for which employees will be paid.

21. PCA's payroll practices are not a "rounding" system at all, it is instead a system for stealing small amounts of time, and thus wages, from all of its nearly 100 production employees in the Nampa plant. Even if such a process was part of a system of "rounding" time, it would be inadequate as a matter of law since PCA's system works only to reduce the amount of time paid, and never results in any increase in time paid.

22. Plaintiffs bring suit on behalf of themselves and all others similarly situated. Similarly situated employees include all hourly, production, maintenance, and shipping workers at PCA's Nampa, Idaho facility. All such employees were subject to PCA's work policies, requirements and time keeping methods.

### IV.   CLAIMS FOR RELIEF

**First Claim for Relief**
**Unpaid Wages Pursuant to Fair Labor Standards Act**
**29 U.S.C. §206**

23. Plaintiffs incorporate, as if fully restated herein, each of the preceding paragraphs.

24. Pursuant to the Fair Labor Standards Act and regulations adopted thereunder. Plaintiffs were entitled to be paid for all of their hours worked, and to be compensated for hours worked in excess of 40 during any workweek at a rate of one and one-half times their regular rates of pay.

25. By willfully failing to properly record all hours actually worked and/or by utilizing a payroll system which systematically understated the actual hours worked, Defendants have failed to pay Plaintiffs for all of their hours worked. including overtime hours. As a result thereof, Plaintiffs have suffered lost wages and overtime pay in an amount to be proven, and are entitled to recovery of liquidated damages.

**Second Claim for Relief**
**Unpaid Wages Pursuant to Idaho Wage Claim Act**
**Idaho Code §45-615**

26. Plaintiffs incorporate as if fully restated herein each of the preceding paragraphs.

27. By willfully failing to properly record all hours actually worked and/or by utilizing a payroll system which systematically understated the actual hours worked, Defendants have failed to pay Plaintiffs all wages due to them pursuant to and/or within the time limits provided federal and state law.

28. As a result thereof, Plaintiffs are entitled to recover unpaid wages and overtime pay, as well as liquidated damages and civil penalties in amounts to be proven.

### Third Claim for Relief
### Unpaid Benefits Pursuant to ERISA
### 28 U.S.C.S. §1132

29. Plaintiffs incorporate as if fully restated herein each of the preceding paragraphs.

30. Plaintiffs were entitled to receive certain benefits including retirement benefits as a result of their employment with PCA. Plaintiffs' retirement benefits included a plan pursuant to Section 401(k) of the U.S. Treasury Regulations. The 401(k) Plan created and operated by PCA allows employees, including the Plaintiffs to designate a percentage of gross wages to a tax-deferred investment account. The 401(k) Plan created and operated by PCA requires PCA to match each employee's contributions up to a specified percentage.

31. Because PCA understated and underpaid Plaintiffs' earned wages, PCA also under-contributed to the 401(k) accounts of Plaintiffs, in amounts to be proved. Plaintiffs are therefore entitled to legal and equitable relief to ensure PCA complies with the terms of the plan.

WHEREFORE, Plaintiffs seek relief as follows:

a. For trial by jury as to all matters for which a jury is permitted;

b. For an award of lost wages in amounts to be proven;

c. For an equal, additional amount as liquidated damages;

d. For treble damages where appropriate pursuant to the Idaho Wage Claim Act;

e. For attorney fees, taxable costs, and expenses pursuant to both state and federal law; and,

f. For all other relief the Court deems just and appropriate.

DATED this 24th day of September, 2024.

PIOTROWSKI DURAND, PLLC

____/s/*James M. Piotrowski*_____
James M. Piotrowski
Marty Durand
Attorneys for Plaintiffs